Appellant was indicted by the Houston County Grand Jury for arson in the first degree, in violation of § 13A-7-41, Code of Alabama (1975 Supp. 1977). At arraignment, appellant pleaded not guilty, and was subsequently tried before a jury. At the conclusion of all testimony, the trial judge excluded the offense of arson in the first degree from the jury's consideration, and charged the jury only as to attempted arson *Page 195 
in the first degree. The jury found appellant guilty and the court sentenced him to twelve years' imprisonment. This appeal followed the trial court's denial of appellant's motion for new trial.
Ray Tindall, a supervisor at the Hedstrom Company in Dothan, Alabama discovered a smoldering fire in a small office of the Hedstrom plant on the evening of October 24, 1980 at approximately 8:30 p.m. The fire was caused by a small space heater which had been placed on a desk, turned on, and draped with a large IBM printout. At the time this fire was discovered, there were approximately 75 people working in the Hedstrom plant. Tindall quickly smothered the fire with a cushion, thereby confining the damage to the heater and the scorched desk top. Tindall also testified that appellant, who was employed at Hedstrom, had recently received a demotion in his job at the plant.
Security guard Patsy Pharr was working at Hedstrom the evening of October 24, 1980 when she observed the appellant on top of a fire pump house looking into a Hedstrom plant window. The appellant was not authorized to be on the Hedstrom property during the time Ms. Pharr observed him. Ms. Pharr approached appellant and called him by name. Appellant denied his identity, but when confronted further he admitted he had climbed a fence to gain admittance. Appellant first refused to accompany Ms. Pharr to the guard station, but then complied. On the way to the guard station, appellant asked Ms. Pharr if she had seen the mess in Bobby Glover's department of the plant, and she replied "no." At the guard station, Ms. Pharr had security guard Kathy Burnham call the plant supervisor, Joe Cotton. She further testified there were people in the building into which appellant was peering when she first observed him. Also, appellant appeared to her to have been drinking, but was not extremely intoxicated.
Cathy Burnham, another security guard at Hedstrom, testified she saw the appellant on the evening of October 24, 1980. At 6:30 p.m. he appeared at an entrance to Hedstrom and requested to enter to see a fellow employee, Jeff Peterman. Appellant did not appear to have been drinking. Because appellant was off duty, he was not allowed to enter the premises, according to company policy. Appellant phoned Peterman who came to the gate. Peterman conversed with appellant, and signed back in at 6:50 p.m. Appellant then left the area. Later that evening, at approximately 8:55 p.m., Ms. Burnham saw appellant in the custody of security guard Pharr as Pharr returned from plant rounds. At this time she noticed the odor of alcohol on appellant. Ms. Burnham contacted Bobby Glover and proceeded with him to his department in the plant. Upon arriving there she detected the odor of something burning. The floor was covered with a liquid substance with a strong odor. An oven which was used to bake the finish on furniture was turned on. The conveyor belt, however, was turned off. Mr. Bobby Glover testified the ovens referred to by Ms. Burnham contained several chests of drawers, close to the point of igniting into flame. Glover testified he had been appellant's supervisor, but that appellant had been transferred out of his shop. The liquid which he and Officer Burnham observed on the floor was approximately ten gallons of a highly flammable and explosive lacquer thinner. When he left the plant earlier, the buckets of thinner had been stacked with lids placed upon them to prevent the possibility of fire. Glover also observed that a lacquer thinner spray hose had been cut. He also stated 75 to 100 people were working on the night shift that evening.
Ralph Wilson Lingo, a Hedstrom employee, testified appellant had told him about week before the arson attempt that because he had been transferred, he was going to get even for the transfer.
Jeffrey Allan Peterman, another Hedstrom employee, corroborated security guard Burnham's testimony as to appellant's having called him to the plant gate the evening of October 24, 1980. Appellant told Peterman at that time he would get even with the people who transferred him. Appellant *Page 196 
did not appear to have been drinking. Peterman stated appellant knew he was returning to the building after the conversation with him and that he was working the evening shift. Peterman was at work in the building between 8:00 and 9:00 p.m. that evening.
Mike Gilley, an investigator in the criminal division of the Houston County Sheriff's Department, took a statement from appellant at 12:25 a.m. on October 25, 1980 at the Houston County Jail. Appellant was given his Miranda warnings and there was no inducement or coercion employed in obtaining the statement. Appellant admitted jumping the fence to gain entrance to the Hedstrom facility. He stated he accidentally tripped over a bucket of paint thinner behind the oven unit, and that he did cut the lacquer spray hoses with a pocket knife. He denied turning the oven on, however. He said he did place some paper on top of a heater on a desk and turned on the heater, prior to spilling the thinner in another part of the building. After spilling the thinner he ran outside and was caught by Officer Pharr. He stated he did what he did for "pure meanness," because he felt Hedstrom had cheated him out of his job by demoting him. At the end of this statement he added, ". . . well, there ain't no sense in saying I tripped, because they won't believe me. So, I did pour the thinner out." Officer Gilley stated the appellant did not appear to be intoxicated at the time he gave the statement. The State rested at the conclusion of Officer Gilley's testimony.
Appellant's motion to exclude the State's evidence for failure to prove a prima facie case was denied by the trial court, and the defense called the appellant Perry Anthony Bateman to testify in his own behalf. Appellant testified he was employed with Hedstrom for three years before the arson incident. He had recently been demoted from operating an oven to hand sanding on a production job. He admitted talking to Peterman at the plant gate for the purpose of making a car payment to Peterman, but denied making any threat about the plant. He stated he had been drinking quite heavily, and had recently been hospitalized for a drinking problem and an ulcer. After he talked to Peterman he consumed more alcohol, then returned to Hedstrom and jumped the fence to make a further payment to Peterman. He tripped over the thinner while looking for Peterman. Appellant denied turning on the oven, but admitted turning on the heater on the desk, and cutting the lacquer hose lines. He could not remember if he placed the IBM printout on the heater. Appellant stated he did not intend to start a fire at the Hedstrom Building.
Joan Bateman, appellant's wife, testified her husband had a drinking problem and an ulcer. The defense then rested.
 I
Appellant argues the trial court erred in failing to charge the jury on the offenses of attempt to commit arson in the second and third degrees. We note first that the court charged the jury that the appellant could not, as a matter of law, be found guilty of the crime of arson in the first degree because there was no evidence presented of any actual damage to the building involved. He therefore properly limited his charge to the crime of attempt to commit arson in the first degree. See §13A-1-9 and § 13A-7-41, Code of Alabama (1975) (as amended 1977); Chavers v. State, Ala., 361 So.2d 1106 (1978). Appellant submitted no written requested charge on attempt to commit arson in the second or third degree. Because the appellant failed to submit appropriate written charges on attempt to commit the crime charged, it was not error for the trial court to refuse to charge the jury on these possible lesser included offenses. Harville v. State, Ala.Cr.App., 386 So.2d 776 (1980). Where the trial court's charge to the jury is not as full as counsel may desire, his only remedy is to request written charges covering the missing matter. While the defense attorney here did orally except to the failure of the court to charge as requested, such an exception can reach only the statements of the law made by the court, and not statements *Page 197 
of the law omitted by the court's charge. Harville, supra; Hallv. State, Ala.Cr.App., 375 So.2d 536 (1979). Therefore, no error was preserved for review in this matter, and we pretermit discussion of the substantive issues of appropriate lesser included offenses of the crime of arson in the first degree.
 II
Appellant contends the trial court should have granted his motion to exclude the State's evidence for failure to prove a prima facie case, in that the State failed to prove any actual damage to the Hedstrom building. The trial court expressly found as a matter of law that no damage was proven by the State's case. While it appears that § 13A-7-41 Code of Alabama (1975) (as amended 1977) does require some actual harm or injury to the building which diminishes or impairs its value, §13A-1-9 Code of Alabama (1975) (as amended 1977) specifically provides that an attempt to commit the offense charged may be a lesser offense included in the offense charged. § 13A-1-9 reads in pertinent part as follows:
 "(a) A defendant may be convicted of an offense included in an offense charged.
An offense is an included one if:
 (1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 (2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 (3) It is specifically designated by statute as a lesser degree of the offense charged; or
 (4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission. . . ."
We therefore find the trial judge acted appropriately in excluding arson in the first degree from the jury's consideration and charging instead on the lesser included offense of attempted arson in the first degree.
 III
Appellant asserts the trial court erred in denying his requested written charges dealing with the exculpatory effect of intoxication on the crime charged. We note first that several of the charges requested by the appellant were ungrammatical, contained misspelled or misused words which would tend to confuse the jury, or were not predicated upon the evidence, and were therefore properly refused on those grounds.Bascom v. State, Ala.Cr.App., 344 So.2d 218 (1977). Additionally, the trial court in its oral charge went to great and exacting lengths to instruct the jury correctly on the exculpatory effect of intoxication upon the crime charged.Barnes v. State, Ala.Cr.App., 361 So.2d 390, cert. denied, Ala., 361 So.2d 396 (1978).
In order to be guilty of an attempt to commit the crime charged, the defendant must act with the intent to commit the specific offense charged. Section 13A-4-2, Code of Alabama 1975 (As amended 1977). The court instructed the jury that voluntary intoxication on the part of the defendant which would render him incapable of forming the necessary specific intent would entitle him to an acquittal of the crime of attempt to commit arson in the first degree. The law and the facts were therefore fairly placed before the jury, and it was their province to determine the existence and extent of any intoxication on the appellant's part. Strong v. State, 52 Ala. App. 237,291 So.2d 325 (1974).
We have searched the entire record and find no error prejudicial to the substantial rights of the appellant. Therefore, the judgment of conviction by the Houston Circuit Court is affirmed.
AFFIRMED.
All the Judges concur. *Page 198